UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| TARA GANNON, | ) Civil No.: 7:21-cv-00124 |
| Plaintiff, | ) |
| v. | ) |
| | ) COMPLAINT and |
| BLUETONE MEDIA, INC., | ) DEMAND FOR JURY TRIAL |
| Defendant. | ) |

Plaintiff, Tara Gannon ("Gannon" or "Plaintiff"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§95.25.1 *et. seq.,* against Defendant BlueTone Media, Inc. ("BTM" or "Defendant").

## NATURE OF GANNON'S CLAIMS

1. Gannon brings her FLSA claim pursuant to 29 U.S.C. § 216(b) and she seeks to recover unpaid overtime compensation and statutory penalties during the three-year period preceding the filing of this Complaint.

2. Defendant failed to pay all wages Gannon earned pursuant to the NCWHA. Specifically, Defendant violated N.C. Gen. Stat. §§ 95-25.1 *et. seq.* by failing to pay Gannon all earned wages and failing to pay her all earned wages due on her regular paydays and due on the next regular payday following the termination of her employment.

## THE PARTIES

3. Gannon is an adult individual who is a resident of Wilmington, North Carolina.

4. BTM is a foreign corporation registered and in good standing in the State of North Carolina, located at 201 N Front Street, Suite 601, Wilmington, NC 28401.

## JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 et. seq.

6. The claims for violations of the NCWHA are based on the statutory and common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claims – both claims arise out of Defendant' unlawful policies and practices related to Gannon's compensation.

7. This Court has personal jurisdiction because Defendant conducts business in New Hanover County, North Carolina, which is located within this judicial district.

8. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in New Hanover County, North Carolina.

## COVERAGE ALLEGATIONS

9. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

11. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

12. At all times hereinafter mentioned, Gannon was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

13. At all times hereinafter mentioned, Gannon was an individual employee engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

14. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

15. At all times hereinafter mentioned, Gannon was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

## FACTUAL ALLEGATIONS

16. BTM is an enterprise engaged in the business of website design and digital marketing services.

17. BTM employed Gannon during the FLSA's three-year statutory period preceding the filing of this complaint.

18. At all relevant times, Gannon was a non-exempt employee of BTM within the meaning of the FLSA and eligible for overtime compensation for all work performed over 40 hours in a workweek.

19. BTM did not accurately track and record the hours Gannon worked.

20. In or around March, 2018, Gannon began working for BTM as an Account Executive. As an Account Executive, Gannon was paid a base salary and received commissions. In this role, Gannon was a non-exempt employee under the FLSA entitled to an overtime premium for all hours worked over 40 in a single workweek.

21. After Gannon's hire, BTM required Gannon to work hours over forty hours per week. Gannon estimates she averaged approximately 45-50 hours per workweek during her employment. BTM required Gannon to be at work from 8 a.m. to 5 p.m. Gannon regularly worked past 5 p.m. and would often work on the weekends.

22. By way of example, during the workweek beginning on April 27, 2020, and ending on May 2, 2020, Gannon worked approximately 55 total hours, consisting of approximately 15 overtime hours. Gannon was only compensated for 40 hours at her hourly rate. BTM failed to compensate Gannon for 15 hours of overtime work.

23. BTM knew or should have known that Gannon performed overtime work without pay because BTM's Chief Executive Officer, Jimmy Honsinger ("Honsinger"), required Gannon to complete assignments outside of work if she did not complete them during normal work hours. Gannon asked Honsinger if she would receive overtime compensation in or about November 2019. Honsinger told Gannon she could earn personal time off ("PTO") in lieu of hours worked above forty hours in a single workweek.

24. BTM's failure to pay Gannon the required overtime premium for all hours worked over forty in a workweek was willful. BTM's failure to pay Gannon the agreed upon commissions and regular hourly rate for hours worked over forty in a workweek was also willful.

25. As part of Gannon's compensation plan, Gannon was paid an annual base salary and a commission based on Gannon's quarterly revenue.

   a. Gannon received the annual salary on a weekly basis. Gannon received the base salary regardless of how many sales she completed. Gannon was required to work at least forty hours per workweek to receive the weekly paycheck.

   b. Gannon's commission was based on the previous month's total for commissions. For example, the total commission for March was divided by four and distributed over the four weeks in April.

26. In 2019, Gannon accrued commissions based on her average quarterly net sales approximately totaling $23,000.00. Gannon received no compensation for commissions accrued for 2019.

27. In or about December 2019, Gannon spoke with BTM's accountant, Megan Tarble, and Honsinger, about not receiving compensation for the commission she accrued in 2019. Honsinger told Gannon there was error with her compensation. Honsinger further stated BTM would not make it up to her but moving forward they would correct her compensation plan. Gannon's compensation plan was never adjusted. Gannon told Honsinger that she needed to receive her compensation. Honsinger responded that he would give Gannon a "loan" while BTM waited to receive payment from its clients. Honsinger wrote Gannon a check from his personal account and called it a "loan."

28. In all actuality, BTM willfully failed to pay Gannon all wages earned and Honsinger personally paid Gannon's paycheck, calling it a "loan." Gannon erroneously made fifty-one payments of $50 to Honsinger to repay the loan.

29. In 2020, Gannon earned commissions based on her average quarterly net sales totaling $37,594. Gannon only received $22,201.68. Gannon is still owed $15,392.84 for the commissions earned in 2020.

30. In January 2021, Plaintiff earned commissions totaling $6,277.50.

31. On or about January 25, 2021, Gannon gave BTM notice that she was resigning and requested she be paid for all commissions she was owed.

32. On or about January 29, 2021, Gannon resigned from BTM. Plaintiff did not and still has not received compensation for the commissions she earned working for BTM.

33. After Gannon resigned, she stopped making payments on Honsinger's "loan."

## Count I - Violation of FLSA – Overtime

34. Gannon incorporates by reference paragraph 1-34 of her Complaint.

35. Defendant's violation of the FLSA arises from its failure to pay all overtime wages earned by Gannon.

36. Defendant violated the FLSA by failing to pay Gannon an overtime premium rate of pay for all hours worked over forty in a workweek.

37. Defendant violated the FLSA by failing to comply with the timekeeping and recordkeeping provisions of the FLSA.

38. Defendant's violation of the FLSA was willful.

## Count II- Violation of NCWHA – Unpaid Wages

39. Gannon incorporates by reference paragraphs 1-39 of her Complaint.

40. Gannon's NCWHA claims arise from Defendant's policy and practice of failing to pay earned wages in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

41. Defendant failed to pay, and failed to timely pay, all wages Gannon earned on her regularly scheduled paydays, including the next regular payday following the termination of her employment.

## PRAYER FOR RELIEF

WHEREFORE, Gannon demands the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Gannon and for liquidated damages equal in amount to the unpaid compensation found due to Gannon;

b) An Order pursuant to N.C. Gen. Stat. § 95-25.22 finding Defendant liable for unpaid wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

c) An Order awarding the costs of this action;

d) An Order awarding reasonable attorneys' fees;

e) A Declaration and finding by the Court that Defendant willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

f) A Declaration and finding by the Court that Defendant willfully violated provisions of the NCWHA by failing to comply with the wage payment requirements of the NCWHA.

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Gannon demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com